

WAGGONER CARR
ATTORNEY GENERAL

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

February 24, 1966

This Opinion
Affirms Opinion

# O-2380

O-2704
O-6011
C-6883
V-1397

Honorable F. R. Booth
Executive Director
Texas Water Rights Commission
Sam Houston Building
Austin, Texas 78711

Opinion No. C-625

Re: Whether the Comptroller of
Public Accounts should ap-
prove and issue a warrant
pursuant to a Texas Water
Commission voucher, under
the facts submitted.

Dear Mr. Booth:

You have requested the opinion of this office as to
the subject question, and in this connection you have sub-
mitted certain facts, which are summarized as follows:

By letter of August 12, 1964, the Gover-
nor directed the Texas Water Commission to
undertake large-scale studies aimed at the
development of a State Water Plan. There-
after, certain emergency and supplemental
funds were transferred to the Water Commis-
sion to cover costs of this program. Over
a period of months, a number of contracts
were let to various consulting firms for
the performance of necessary engineering
studies;

During this particular period, the Texas
Water Commission was in a state of flux, due
to the impending reorganization of the State
water agencies. On September 1, 1965, new
agencies were to come into existence, and many
functions were to be realigned, although there
was an imperative necessity for continuing in
the work on the State Water Plan;

A number of engineering reports were due
to be received, and it would be necessary that
these large reports be reproduced in consider-
able quantity. The reports began arriving in

- 3032-

August, 1965, and it became obvious that there was insufficient paper on hand to cover the requirements. Without further ado, the necessary paper was ordered on August 30, 1965. With this large an order, delivery was made in three increments, beginning in September and ending on October 29, 1965, to the Water Development Board, which had assumed the printing duties. Based upon the August 30, 1965, purchase order by the Texas Water Commission, a voucher for the payment of the paper costs was approved on November 5, 1965, by the Texas Water Rights Commission, such voucher being drawn against funds appropriated to the Texas Water Commission for the fiscal year 1965, which ended August 31, 1965. The voucher was returned unpaid by the Comptroller of Public Accounts, and Attorney General's Opinion O-2380 (1940) was cited as the basis for refusal.

As a general proposition it is quite true that consumable supplies received in one year may not be paid for out of the agency appropriation for another year. Attorney General's Opinions O-2380 (1940), O-2704 (1940), O-6011 (1944), O-6883 (1945) and V-1397 (1952). In the case at hand, the paper was ordered on August 30, 1965, the next-to-last day of the 1964-1965 biennium, and the first shipment was not received until the commencement of the 1966-1967 biennium. On the basis of the time sequence alone, the prior opinions of this office would require that the bill be paid only from appropriations available for the fiscal year 1966.

A close examination of the above-cited opinions reveals that the rule regarding payment for consumable supplies does not rest upon principles of law that have been clearly laid down in appellate decisions, but rather upon interpretations as to legislative intent and determinations as to public policy. This is not to cast doubt upon the validity of those prior interpretations, because they have been the basis of budget planning by state agencies for many years, but is merely to show that we are not dealing with an immutable legal principle. The case which we have at hand is certainly not the usual case, wherein an agency discovers itself left with some unused money at the end of an appropriation period, and hurriedly orders a big stock of stationery and supplies in order to avoid having to turn money back to the Treasury.

In our particular case, we are not dealing with the ordinary course of business of a State agency. Here, the Governor ordered the immediate initiation of a massive planning program; emergency funds were made available by both the Governor and

the Legislature for use during the fiscal year 1965; a particular amount of paper was purchased for the special purpose of printing the engineering reports due in from consulting engineers. While some of this paper may have been used to replace borrowed stocks, nevertheless, the sole purpose of this particular order was to handle the large volume of engineering reports that had arrived by August 30, 1965, and were due to arrive. Such paper is used to prepare a record that, while not permanent in nature, will be used for a number of years. Such paper was ordered for the specific purpose of preparing the large engineering reports and reproducing same in large quantities to be used in the long-range and large-scale studies aimed at the development of a State Water Plan. These reports and copies will be used for a number of years, and are in the nature of "capital assets of the State." We are therefore of the opinion that the fact situation here is within the holding of Attorney General's Opinion O-6011 (1944), from which we quote the following:

> "'With respect to those supplies or things which, as you state, might be termed a "capital asset of the State", the rule is that such supply or fixture may be purchased and paid for out of the appropriation for any year of the biennium for which an appropriation has been made. Fixtures, equipment and supplies whatsoever that they do not perish with their use, but which may be continuously used after the year in which they are purchased are not governed by the identical principles applicable to those supplies which are consumed with their use. Thus, machines, fixtures, books, and the like, are not consumed during the year they are purchased, but they last for many years. Such 'capital assets' of the State may therefore be purchased and paid for out of the appropriation for any year of the biennium for which an appropriation for such article has been made. This is true regardless of the year in which the delivery is made, since the purchase during the proper year amounts to an expenditure or commitment of the appropriation for that year.'"

We reaffirm the prior Attorney General's opinions cited herein as to the general class of situation. Both the Governor and the Legislature exhibited an intention that the development of a State Water Plan was to be treated as a special, urgent and long-range project, and the particular paper purchase here was an integral part of the said project, making available for continuing use the extensive engineering reports essential to the project. It is therefore the opinion of this office that,

under the particular facts presented, the Comptroller of Public Accounts should approve and issue a warrant pursuant tc Texas Water Commission Voucher No. 3017, drawn against the said Water Commission's appropriated funds for the fiscal year 1965.

## SUMMARY

Under the particular facts involved, the Comptroller of Public Accounts should approve and issue a warrant in payment of Texas Water Commission Voucher No. 3017, drawn against the Water Commission's appropriated funds for the fiscal year 1965.

Yours very truly,

WAGGONER CARR
Attorney General

By *Malcolm L. Quick*
Malcolm L. Quick
Assistant

MLQ:ms

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman
James McCoy
J. C. Davis
John Banks
Kerns Taylor

APPROVED FOR THE ATTORNEY GENERAL
By: T. B. Wright